# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW KELLEE BORGES,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0625-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 9 and 10), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 17 and 22).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

> Step 1        Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2        If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3        If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted;
>
> Step 4        If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

2

| | | |
|---|---|---|
|Step 5|  |If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.|

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 27, 2011. See CAR 26.[1] In the application, plaintiff claims that disability began on March 1, 2009. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 11, 2015, before Administrative Law Judge (ALJ) Peter F. Belli.[2] In a November 19, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease of the cervical and lumbar spine, degenerative shoulder changes, mild right foot paralysis, status post-traumatic brain injury, and amnestic disorder;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: light work; the claimant can understand, remember, and carry out simple job instructions, but could only occasionally perform these duties for detailed and complex tasks; the claimant can frequently interact with the general public, co-workers, and supervisors, and can adjust to simple changes in the workplace;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy the claimant can perform.

See id. at 29-36.

/ / /

/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on September 12, 2017 (Doc. 12).

[2] **Error! Main Document Only.** A hearing was first held on July 30, 2013, at which plaintiff "exhibited features of impaired hearing." CAR at 26. The ALJ postponed the hearing to schedule plaintiff for an auditory examination. See id. A second hearing was scheduled for March 25, 2014, but plaintiff failed to appear. See id. At a third hearing held on July 21, 2014, plaintiff referenced various records from the Department of Veterans' Affairs (VA) which had not been submitted into evidence. See id. Plaintiff also "exhibited various psychological features that warranted further evaluation." Id. Plaintiff was scheduled for a consultative psychological evaluation and a fourth hearing was scheduled for January 21, 2015, at which time plaintiff's attorney stated that the requested VA records still had not been submitted into evidence. See id. The ALJ postponed the hearing yet again to June 11, 2015. See id.

Plaintiff submitted additional medical evidence following the hearing, which was included in the record at Exhibit 16F. See CAR 26. After the Appeals Council declined review on January 13, 2017, this appeal followed.

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's VA disability ratings; (2) the ALJ's residual functional capacity finding is not based on proper evaluation of the medical opinion evidence; and (3) the ALJ failed to provide legally sufficient reasons for rejecting his statements and testimony as not credible.

### A. Plaintiff's VA Ratings

A VA determination of disability is ordinarily entitled to great weight. See Berry v. Astrue, 622 F.3d 1228, 1236 (9th Cir. 2010); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). The ALJ may give less weight to the VA's decision if the ALJ provides "persuasive, specific, valid reasons for doing so that are supported by the record." Berry, 622 F.3d at 1236; McCartey, 298 F.3d at 1076; see also Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1225 (9th Cir. 2010).

Regarding the VA determinations, the ALJ stated:

> . . . His VA disability report . . . did not find any limitations related to carpal tunnel syndrome (16F/2-3).
>
> * * *
>
> In August 2013, the claimant's VA report indicated that he was primarily disabled due to depression and traumatic brain injury (16F/2-12). I give little weight to this opinion because, as noted above, the claimant [sic] brain MRI showed only mild impairment (2F/89/92). The claimant also has neither been counseled nor hospitalized for depression since the alleged onset date.

CAR 30, 35.

///
///
///

Exhibit 16F, submitted by plaintiff following the hearing, consists of two documents, dated August 13, 2013, and August 19, 2013, outlining the VA's decision on plaintiff's disability claim. See CAR 1923-1933. These records reflect plaintiff was considered 10% disabled as of January 27, 2012, due to radiculopathy in the left lower extremity associated with lumbar spine strain, with degenerative changes at L3 and L5. See id. at 1923, 1928. The VA also determined that a prior rating of 50% disabled due to depression, including traumatic brain injury, would continue. See id. The VA concluded: "Your overall or combined rating remains 100% effective January 27, 2012, and 90% effective June 12, 2012." Id. at 1924.

Plaintiff argues:

> The VA's rating of Plaintiff's disabilities is based on Plaintiff's multiple impairments, but the ALJ addressed only the disability rating granted by the VA in August 2013 for Plaintiff's TBI/Depression (Tr. 35). This is reversible legal error for the reasons discussed below.
>
> * * *
>
> In this case, Plaintiff's 50% disability rating based on his TBI/Depression was not granted until August 2013 (Tr. 1923). Plaintiff's VA records indicate that before and after August 2013, Plaintiff had service-connected disability ratings based on other impairments.
> Prior to August 2013, the VA determined Plaintiff's service-connected disabilities were lumbosacral or cervical strain (10%), tendon inflammation (10%), migraine headaches (10%), major depressive disorder (10%), traumatic arthritis (10%), paralysis of external popliteal nerve (10%), tinnitus (10%), degenerative arthritis of the spine (40%), hiatal hernia (10%) and labyrinthitis (10%) (Tr. 1125). Although this totals 130%, Plaintiff was given an overall combined service-connected disability rating of 80% (Tr. 1125). In January 2012, Plaintiff asked the VA to review and revise his service-connected disability rating (Tr. 1923).
> On August 19, 2013, the VA determined Plaintiff had a 10% disability rating for radiculopathy in his left leg (lumbar spine strain) and 50% for his TBI/Depression, both of which were retroactive going back to January 27, 2012 (Tr. 1923, 1929). Plaintiff's other service-connected disabilities were migraine headaches (30%), degenerative arthritis of the spine (20%), traumatic brain disease (10%), limited motion of jaw (TMS) (10%), limited motion of ankle (10%), limited motion of wrist (10%), tinnitus (10%), labyrinthitis (10%), traumatic arthritis (10%), scars (10%), hiatal hernia (10%), tendon inflammation (10%) and paralysis of the external popliteal nerve (10%), for a total of 230% (Tr. 1968). The record does not indicate when Plaintiff's disability ratings for his migraines, degenerative arthritis, etc., were changed. The VA determined Plaintiff had an overall combined disability rating of 100% effective January 27, 2012, and 90% effective June 12, 2012 (Tr. 1924).

///

So, prior to August 2013, Plaintiff's service-connected disability ratings based on impairments other than his TBI/Depression totaled 120% (after subtracting the 10% granted for his depression) (Tr. 1125). After August 2013, these disability ratings totaled 180%, after deducting his 50% rating for TBI/depression (Tr. 1968). Although most of the impairments covered by the VA's disability ratings were not disabling when considered alone, the VA considered the combined impact of Plaintiff's impairments, albeit just his service-connected impairments.

The ALJ's failure to address all of Plaintiff's service-connected disability ratings is error. Berry, 622 F.3d at 1236. This error is not harmless. For example, in McCartey, the Ninth Circuit awarded payment of benefits based on the ALJ's failure to address claimant's 80% non-service-connected disability rating. 298 F.3d at 1075-76. Based thereon, remand for payment of benefits is also appropriate in this case.

Here, the ALJ rejected the VA's assessment of disability, which was based largely on depression and traumatic brain injury, because plaintiff's brain MRI showed only mild findings and because there is no evidence of record indicating plaintiff sought mental health treatment since the alleged onset date of March 1, 2009. The lack of objective evidence supporting brain injury and the lack of treatment for depression undermine the VA's determination.[3] Therefore, the ALJ provided persuasive, specific, and valid reasons for giving little weight to the VA's disability rating. See Berry, 622 F.3d at 1236; McCartey, 298 F.3d at 1076.

/ / /

/ / /

/ / /

---

[3] The VA's disability determination is also undermined by its own observations. As the ALJ noted:

> **Error! Main Document Only.**During a VA examination in March 2012, the claimant's physician noted that the claimant had a "lengthy, complicated, and vague story regarding multiple injuries and conditions." The claimant also demonstrated "decreased effort with ALL body systems that were not consistent with activity when not examined" (emphasis in original). He also showed exaggerated pain behavior such as "grimacing with all movement" (3F/19-20/23/29/34). This report cited multiple specific instances of this exaggerated behavior (3F/23).
>
> CAR 33.

These and similar observations are discussed in more detail below with respect to the ALJ's adverse credibility finding.

Plaintiff's reference to other VA records at CAR 1125 and 1968 is unavailing. CAR 1968 is a record of a September 20, 2010, progress note from the Sacramento VA Medical Center. See id. at 1968. Because the record is from 2010, it does not, as plaintiff suggests, indicate plaintiff's total disability rating "[a]fter August 2013." CAR 1125 is an April 10, 2012, progress note from the same source indicating plaintiff's total service-connected disability was 80%. See id. at 1125. The document is consistent with the August 2013 determinations and does not support plaintiff's contention that his "service-connected disability ratings . . . totaled 120%" prior to August 2013.

### B. Evaluation of the Medical Opinions

At Step 4, the ALJ determined plaintiff's residual functional capacity. See id. at 32-35. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[4]

/ / /

/ / /

/ / /

/ / /

---

[4] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

According to plaintiff, the ALJ erred in making this determination because he failed to properly evaluate the medical opinion evidence. Plaintiff argues:

> The ALJ's residual functional capacity finding is not based on an examining or treating medical opinion of record - there is no report of a consultative examination assessing Plaintiff's physical functioning. The ALJ did not even entirely rely on the opinion of the state agency physician, but rejected his opinion that Plaintiff's ability to lift overhead was limited (Tr. 35, 63). Instead, the ALJ's RFC finding is based on his lay interpretation of the medical evidence, much of which was never reviewed by the state agency, such as the MRI of Plaintiff's left shoulder and the x-rays of his right hip (Tr. 157-60). Because the ALJ's RFC finding is based on his lay opinion, such finding is based on insubstantial evidence. See Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) (ALJ's determination not based on substantial evidence because it was not based on a medical opinion, but on the ALJ's "own views").

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

/ / /

/ / /

9

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As discussed above, the ALJ gave little weight to the August 2013 VA disability determinations. See id. at 35. The ALJ evaluated the treating and examining doctors' opinions of record as follows:

> . . .Dr. Guston opined in August 2014 that the claimant is mildly limited in his ability to perform detailed tasks and work on an independent and consistent basis. He also assigned the claimant a Global Assessment of Functioning ("GAF") score of 55-60, which indicates moderate symptoms (13F/1-11). I accord great weight to this opinion because it is consistent with the evidence of intermittent memory loss relating to the claimant's errands and daily routine (2F/19-20/25-26, 3F/19-20/23/29/34, 6F/209, 7F/3).
>
> In December 2012, Dr. Carver opined that the claimant can lift up to 25 pounds; cannot perform any repetitive lifting, bending, or twisting; and must be able to sit or stand as needed (2F/64-65). I accord some weight to this opinion because it is consistent with the claimant's mild back impairments and stable post-traumatic shoulder changes (2F/31-32/37/78-82, 3F/188, 5F/7/15, 6F/2). However, due to the claimant's lack of any back surgery, negative electrodiagnostic study, and ongoing driving activity, there is no evidence to suggest that he must be allowed to change positions as needed (2F/75-76).
>
> CAR 34.

///

///

Regarding the non-examining consulting doctors' opinions, the ALJ stated:

> Lastly, the State medical consultants opined that the claimant can perform a reduced range of medium work with limited reaching, handling, and fingering. They also found that the claimant is moderately limited in his ability to carry out detailed instructions, maintain concentration for extended periods, respond appropriately to workplace changes, and interact appropriately with others (1A/9-12, 3A/8-11). I accord great weight to these psychological restrictions because they are consistent with Dr. Guston's findings of mild to moderate psychological impairment (13F/1-11). However, I accord only some weight to these lifting restrictions because they are inconsistent with the claimant's history of back, shoulder, and foot impairment (2F/31-32/37/78-82, 3F/188, 5F/7/15, 6F/2). Moreover, the reaching restrictions are at odds with the claimant's testimony that he continued to drive, cook, and go grocery shopping on a regular basis.

CAR 35.

Plaintiff first contends the ALJ's evaluation of the opinion evidence is flawed because he failed to consider various clinical observations. According to plaintiff:

> The insubstantiality of the ALJ's opinion is illustrated by his summary of the medical evidence, which indicates an impermissible picking and choosing of the medical evidence that tended to support the ALJ's conclusions. For example, the ALJ noted the decreased effort during examination opined by NP Palmquist in March 2012 (Tr. 570-659). The ALJ incorrectly stated this exam was performed by a VA physician and did not mention NP Palmquist's recommendation that Plaintiff should be evaluated by another provider, thereby indicating his lack of confidence in his report (Tr. 33, 659). The ALJ inexplicably disregarded the subsequent examination performed by NP Breslin, who mentioned nothing about any reduced effort by Plaintiff, and gave very short shift to the positive clinical findings of Plaintiff's physicians (Tr. 33).

In support of his contention, plaintiff references a list of clinical findings such as: (1) positive slump test on the left; (2) positive straight leg raises; (3) reduced range of motion; (4) positive foot drop; (5) decreased sensation in the left forearm and hand; (6) reduced muscle strength; and (7) muscle spasms in the neck.

Second, plaintiff asserts the ALJ failed to consider opinions rendered by treating physicians. Plaintiff argues:

> The ALJ rejected the opinion of Dr. Carver, one of Plaintiff's physicians at Kaiser Permanente, that Plaintiff could perform limited duty if he were allowed to sit and stand as needed, but failed to address the opinions of other Kaiser physicians (Tr. 34, 487).

11

Dr. Carter [sic] expressed his opinion in November 2009 (Tr. 487). The ALJ failed to consider that Dr. Carver's opinion was not an outlier. Indeed, in March 2009 and August 2009, Plaintiff was taken completely "Off Work" by two other other [sic] Kaiser physicians (Tr. 430, 458). Subsequent to Dr. Carver's opinion, Plaintiff was taken completely off work by Dr. Frank, his neurologist at Kaiser, from February 2010 to June 2010 (Tr. 524-25, 541)). Thereafter, Plaintiff lost his Kaiser insurance and he sought treatment at the VA (Tr. 1127).

Plaintiff's arguments are unpersuasive. Residual functional capacity describes what a person can do despite limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia, 751 F.2d at 1085. Therefore, the relevant inquiry is into plaintiff's functional capabilities, both physical and mental. Plaintiff's reference to multiple limitations does not inform this inquiry, nor does it illuminate any error in the ALJ's evaluation of the various medical opinions. Similarly, as to "other Kaiser physicians," plaintiff has not identified any opinions rendered by these other treating sources regarding plaintiff's functional capabilities. "Off work" is a conclusory opinion the ALJ was not required to consider. See Meanel, 172 F.3d at 1113; see also Magallanes, 881 F.2d at 751.

### C. Credibility Assessment

Regarding the credibility of plaintiff's statements and testimony, the ALJ stated:

> The claimant is a 45-year-old male with severe degenerative disc disease of the cervical and lumbar spine, degenerative shoulder changes, mild right foot paralysis, status-post traumatic brain injury, and amnestic disorder. He alleges that these impairments have resulted in constant back and shoulder pain, impaired control of his right foot, poor concentration, and memory loss. He reported that he frequently requires a walking case and uses an orthopedic brace on his right foot on an "as needed" basis. Overall, he estimates that he is unable to walk more than 15-20 minutes at one time or lift more than 10 pounds (3E/5-12).

> However, the claimant also testified that he lives alone, is independent in his self-care, prepares his own meals, drives, goes grocery shopping, and has 50% custody over his children (aged 10 to 13 as of the most recent hearing). He stated that he has lived in a two-story townhouse since February 2010, which requires him to climb stairs several times per day. His Class-C driver's license, which was issued in 2014, also did not contain any restrictions. Lastly, his function report indicated that he was not using any assistive walking devices (3E/5-12).

///

///

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

For example, in April 2009, just one month after the alleged onset date, the claimant had a full range of back motions with no tenderness. He also had normal functioning in his bilateral lower extremities, negative straight leg raises, and 5/5 strength. Hamid Zadeh, M.D., a non-treating source, described this examination as "overall unremarkable" (2F/20).

In June 2009, the claimant had a normal gait and normal sensory functions. He was also "somewhat evasive about past treatment" (2F/19-20). During a physical examination in August 2009, the claimant was noted to be "likely noncompliant with examination" due to poor effort. His pain complaints were also found to be inconsistent with the fact that he moved around the examination area, put on his shoes, and spontaneously picked up his child without any problems (2F/25-26).

In December 2009, the claimant underwent an electrodiagnostic study due to complaints of deceased [sic] sensation in his right foot. This study was unremarkable with "no electrodiagnostic evidence of mononeuropathy, lumbosacral radiculopathy, or plexopathy involving right lower extremity" (2F/75-76).

In June 2010, the claimant was described as well-oriented with normal attention, memory, and fund of knowledge (2F/125-126). In February 2012, he was negative for muscle weakness, back pain radiation, generalized weakness, and balance disturbance. He also demonstrated an independent gait, a good range of motion in all neck plans [sic], and described his memory problems as "mild" (3D/106/108-109/112/115/127/131/152)

During a VA examination in March 2012, the claimant's physician noted that the claimant had a "lengthy, complicated, and vague story regarding multiple injuries and conditions." The claimant also demonstrated "decreased effort with ALL body systems that were not consistent with activity when not examined" (emphasis in original). He also showed exaggerated pain behavior such as "grimacing with all movement" (3F/19-20/23/29/34). This report cited multiple specific instances of this exaggerated behavior (3F/23).

During a shoulder examination in May 2012, the claimant was again noted to be uncooperative and exaggerating his degree of impairment (6F/209). In February 2013, Andrew Ho, M.D., likewise noted that the claimant's physical examination was "difficult to perform as the patient displays very exaggerated responses to manipulation and pain" (7F/33).

In September 2013, David Evans, M.D., a consultative examiner, found that the claimant did not show any evidence of significant hearing loss. He also noted that the claimant had a normal gait, memory, and fund of information (8F/1-8). Lastly, in August 2014, Dr. Guston reported that the claimant ambulated without assistance, had fair attention and

13

concentration, intact working memory, adequate fund of knowledge, linear thought processes, and intact judgment (13F/1-11)

Overall, this evidence does not fully support the claimant's allegations of highly limited mobility and constant physical pain. As noted above, the radiological evidence showed "mild" and stable" degenerative changes to the back and shoulders with only "minimal" compression of the L5 nerve root (2F/31-32/37/78-82, 3F/188, 5F/7/15, 6F/2).[5] These findings are consistent with the claimant's testimony that he lives alone in a two-story home, is independent in his daily activities, takes care of his young children two weeks per month, continues to drive on a regular basis, and has not had any surgeries since 2004.

Although the claimant alleges that he is partially paralyzed in his right foot, his doctors have characterized his foot drop as "mild." His electrodiagnostic study was also unremarkable, he has repeatedly demonstrated an independent gait, and he has continued to drive a car on a regular basis (3E/5-12, 2F/20/25-26/49/75-76). Moreover, he was not prescribed an orthopedic device until February 2014, which was nearly five years after the alleged onset date (12F/16, 14F/48).

Regarding the claimant's status-post brain injury and memory loss, his brain MRI showed only mild demyelating disease (2F/89/92). His doctors also repeatedly noted normal memory functions and concentration (2F/125-126, 3F/112/115, 7F/61, 8F/1-8). Dr. Guston likewise characterized the claimant's memory impairments as "mild to moderate." Accordingly, there is no evidence to indicate that these impairments cause more than moderate psychological impairment.

Lastly, the claimant [sic] doctors noted multiple instances of exaggeration, uncooperative behavior, and "lengthy, complicated, and vague" descriptions of his medical history (2F/19-20/25-26, 3F/19-20/23/29/34, 6F/209, 7F/3). These findings are consistent with the claimant's conduct at the hearings, where he often failed to provide clear answers. This evidence therefore significantly reduces the claimant's credibility in this case.

CAR 32-35.

According to plaintiff:

Other than the an [sic] inadequate discussion of the medical evidence, the ALJ rejected Plaintiff's testimony based on his activities and the fact that he had not undergone surgery since 2004 (Tr. 34).
First, Plaintiff notes that surgery for his shoulder impingement was first recommended in January 2013 (Tr. 1645). Plaintiff's scheduled surgery for August 2013 was cancelled because he had a sinus infection and has not been rescheduled because Plaintiff's continuing sinus and lung infections could not be controlled (Tr. 120-21, 1624, 1838-39). Plaintiff's other treatment included steroid and botox injections, opioid pain

---

[5] **Error! Main Document Only.** The ALJ references x-rays and/or MRIs taken in June 2007 and August 2009.

14

medications, medical marijuana, TENS unit and custom orthotics (Tr. 1431-32, 1434, 1436, 1438, 1432, 1592, 1597-98, 1614, 1662, 1806, 1897). The ALJ fails to explain why this treatment does not support Plaintiff's testimony.

Further, the limited activities cited by the ALJ, such as caring for his children and driving, do not show Plaintiff could sustain substantial gainful activity on a regular and continuing basis, i.e., eight hours a day, 40 hours a week (Tr. 34). See Reddick v. Chater, 157 F.3d 715, 772 (9th Cir. 1998) ("Many home activities are not easily transferrable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Indeed, Plaintiff testified that, other than a few sporadic activities, he spent most of his day sitting or lying down (Tr. 119). These activities are not inconsistent with Plaintiff's testimony. See Reddick, 157 F.3d at 772 (claimant's activities, which were sporadic and punctuated with rest, supported her claim).

Thus, the reasons given by the ALJ for discrediting Plaintiff cannot survive the clear and convincing standard of judicial review.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship

15

> be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As the ALJ outlined in detail, there is ample evidence of malingering, an issue which plaintiff completely ignores. Given this evidence, the court finds the "clear and convincing" standard does not apply in this case. The court finds no error because the ALJ's adverse credibility finding is supported by evidence of symptom exaggeration, which reflects on plaintiff's reputation for truthfulness. See Smolen, 80 F.3d at 1284.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is denied;
2. Defendant's motion for summary judgment (Doc. 22) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: September 20, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE